UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| STANLEY RAY BROWN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 4:12-cv-80-HSM-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Stanley Ray Brown ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 19 & 20]. Plaintiff alleges error in that (1) the Administrative Law Judge ("ALJ") failed to properly consider the opinions of the physicians; (2) the ALJ failed to assign a proper residual functional capacity ("RFC") based on the physicians' opinions; (3) the ALJ failed to properly evaluate Plaintiff's credibility; and (4) the ALJ failed to include a function-by-function assessment in the RFC determination. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 19] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his application for DIB on October 22, 2009, alleging disability as of June 1, 2008 (Transcript ("Tr.") 9). Plaintiff's claim was denied initially and upon

reconsideration, and he requested a hearing before the ALJ (Tr. 9, 55). The ALJ held a hearing on June 13, 2011, during which Plaintiff was represented by an attorney (Tr. 9, 22). The ALJ issued a decision on July 6, 2011 and determined Plaintiff was not disabled because the ALJ found Plaintiff capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 9-16). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-5). Plaintiff filed the instant action on November 19, 2012 [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was 50 years old on his alleged disability date, June 1, 2008 (Tr. 9, 14). Plaintiff has at least a high school education, as he has earned his GED (Tr. 26). Plaintiff has past relevant work only as a steel worker (Tr. 27). Plaintiff attempted to work at a saw mill, but was only able to work there three or four days (Tr. 27). Plaintiff has not worked since late summer 2008 (Tr. 27).

### B. Medical Records

The following summary of Plaintiff's medical records addresses only the specific issues raised by the parties, although all of the pertinent records have been reviewed. Plaintiff's medical records appear to consist only of consultative examiners' opinions. There is no documentation of any medical treatment in the record (Tr. 13), and Plaintiff does not have a treating physician (Tr. 30).

On February 10, 2010, Dr. Thomas Mullady, M.D., a consultative examiner, examined Plaintiff (Tr. 171-73). Plaintiff complained of back and hip pain, which Plaintiff attributed to a motorcycle accident in 1995 (Tr. 171). During the accident, Plaintiff dislocated his hip and

required surgery (Tr. 171). Plaintiff told Dr. Mullady that he could walk one block before his pain required him to stop walking, he could do no yard work, and he has difficulty performing household chores (Tr. 171). Plaintiff informed Dr. Mullady that his pain becomes severe if he rides in a car for more than 50 miles (Tr. 171).

Dr. Mullady physically examined Plaintiff, and found Plaintiff to be "a well-developed, well-nourished, 51-year-old male," who weighed 182 pounds and was 6'1" tall (Tr. 172). Plaintiff had blood pressure of 130/90, which Dr. Mullady noted was essential hypertension, although Plaintiff takes no antihypertensive medication (Tr. 172-73). Plaintiff's heart rate was 72 beats per minute, with normal heart tones and rhythm, and without any murmurs, thrills, rubs, or gallops (Tr. 172). Plaintiff's vision was 20/30 in his left eye, and 20/40 in his right eye, which Dr. Mullady noted was a mild decrease in visual acuity, although Plaintiff does not wear glasses (Tr. 172-73). Dr. Mullady found that Plaintiff had decreased range of motion for his spine and hip, but his range of motion for all other joints was within the normal limits (Tr. 172-73). Dr. Mullady noted that Plaintiff had normal muscle strength, normal grip strength, and normal dexterity (Tr. 173). Dr. Mullady found that Plaintiff walked with a limp in his left leg, but noted that Plaintiff does not use an assistive device to walk (Tr. 173).

Dr. Mullady opined that Plaintiff could lift and carry a maximum of 20 pounds for up to one-third of an eight-hour workday; that Plaintiff would be able to frequently lift and carry a maximum of ten pounds for up to two-thirds of an eight-hour workday; that Plaintiff could stand and walk for at least two hours in an eight-hour workday, with normal breaks; and that Plaintiff could sit for at least six hours in an eight-hour workday, with normal breaks (Tr. 173).

On March 17, 2010, Dr. James P. Gregory, M.D., a non-examining state agency medical consultant, reviewed Plaintiff's records and completed a physical RFC assessment (Tr. 175-183).

Dr. Gregory found that Dr. Mullady's assessment appeared to be "overly restrictive" based upon his review of Dr. Mullady's objective findings (Tr. 181). Dr. Gregory opined that Plaintiff could occasionally lift and carry a maximum of 50 pounds; that Plaintiff could frequently lift and carry a maximum of 25 pounds; that Plaintiff could stand and walk for about six hours in an eight-hour workday, with normal breaks; that Plaintiff could sit for about six hours in an eight-hour workday, with normal breaks; and that Plaintiff had no limitations on his ability to push and pull (Tr. 176). Dr. Gregory opined that Plaintiff was able to frequently climb ramps, stairs, ladders, ropes, and scaffolds; that Plaintiff was able to frequently balance, stoop, kneel, crouch, and crawl; that Plaintiff had no limitations on his ability to reach in all directions, handle (gross manipulations), finger (fine manipulations), and feel (skin receptors); that Plaintiff had no limitations on his visual acuity; that Plaintiff had no limitations on his ability to hear or speak; and that Plaintiff had no environmental exposure limitations (Tr. 177-79).

On May 26, 2010, Dr. Celia M. Gulbenk, M.D., a non-examining state agency medical consultant, reviewed Plaintiff's records and found that she was unable to assess his RFC because she needed an x-ray of Plaintiff's left hip to determine the severity of Plaintiff's limitations (Tr. 184-87).

On June 17, 2010, Plaintiff received an x-ray of his left hip, which showed a "large soft tissue calcification of the greater trochanter suggesting an old calcified hematoma" (Tr. 188). There was also "deformity of the greater trochanter suggesting an old fracture," but there was "no evidence of acute fracture" and "no evidence of dislocation or osseous destructive pathology" (Tr. 188). The x-ray showed mild degenerative change and a probable old fracture (Tr. 188).

On June 29, 2010, Dr. Gulbenk reviewed Plaintiff's records, including his hip x-ray, and completed a physical RFC assessment (Tr. 190-198). Dr. Gulbenk opined that Plaintiff was able to occasionally lift and carry a maximum of 20 pounds; that Plaintiff was able to frequently lift and carry a maximum of 10 pounds; that Plaintiff was able to stand and walk for a total of about six hours in an eight-hour workday, with normal breaks; that Plaintiff was able to sit for a total of about six hours in an eight-hour workday, with normal breaks, and that Plaintiff's ability to push and pull was limited in his lower extremities (Tr. 191). Dr. Gulbenk opined that Plaintiff was occasionally able to climb ramps, stairs, ladders, ropes, and scaffolds; that Plaintiff was occasionally able to balance, stoop, kneel, crouch, and crawl; that Plaintiff was unlimited in his ability to reach in all directions, handle (gross manipulations), finger (fine manipulations), and feel (skin receptors); that Plaintiff had no limitations on his visual acuity; that Plaintiff had no limitations on his ability to hear or speak; and that Plaintiff had no environmental exposure limitations (Tr. 192-94). Dr. Gulbenk's findings were not significantly different from Dr. Mullady's assessment (Tr. 196). Dr. Gulbenk opined that Plaintiff had "severe hip impairment," but she also opined that Plaintiff's statements regarding the severity of his pain were not credible as Plaintiff had not sought treatment for his pain at all and was not even taking over-the-counter medication for his pain (Tr. 197). Dr. Gulbenk assessed Plaintiff as having nonsevere hypertension, as that there was no evidence of chronically elevated blood pressure (Tr. 197).

### C. Plaintiff's Reports

On May 2, 2010, Plaintiff completed a pain questionnaire (Tr. 144-47). In the questionnaire, Plaintiff described his pain as being located in his left leg, hip, and lower back (Tr. 144). Plaintiff stated that the pain is constant, but it has gotten worse over time (Tr. 144). Plaintiff stated that the pain first began to affect his activities about two years before he

completed the questionnaire (Tr. 145). Plaintiff stated that the pain causes him to be unable to work, makes it difficult for him to get around, and also makes it hard to bend over (Tr. 145). Because of the pain, Plaintiff stated that he walks very little and does not do any shopping or household chores (Tr. 145). Plaintiff stated that he does not have health insurance, so he is unable to afford to see a doctor (Tr. 144-45).

On August 16, 2010, Plaintiff completed a disability report for his appeal (Tr. 158-62). In the report, Plaintiff stated that his pain had gotten worse, that it had moved from his hip and leg into his back (Tr. 158). Plaintiff stated that his pain is causing him to be unable to get up or down without assistance (Tr. 158). Plaintiff stated that he had only seen one doctor, when he had his left hip x-rayed, and that he was not taking any medication because he cannot afford it (Tr. 159-61).

### D. Hearing Testimony

At the hearing on June 13, 2011, Plaintiff testified that the only work he has done in the last 15 years was as a steel worker (Tr. 27). Plaintiff testified that he last worked in late summer of 2008 (Tr. 27). Plaintiff stated that he tried working at a saw mill after he stopped working at the steel plant, but he was only able to work there for three or four days because he "couldn't do it" (Tr. 27). Plaintiff testified that he received unemployment compensation in 2009 and 2010 (Tr. 27). Plaintiff testified that he looked everywhere for work, but he was not able to find any work (Tr. 28). Plaintiff testified that he talked to people in the steel industry, but they weren't hiring (Tr. 28). Plaintiff testified that he did not look for other work besides steel work, because that was all he had done in the past (Tr. 28). When questioned by the ALJ as to whether he looked for lighter work, Plaintiff responded that no one was hiring (Tr. 28). When asked by the

ALJ whether he thought he could have worked at a convenience store, Plaintiff stated that he did not know (Tr. 28).

Plaintiff testified that he is not able to work because he cannot sit or stand for long periods (Tr. 28). Plaintiff testified that he can stand for an hour before he needs to sit down, but that after he sits down for two hours, he has to stand up (Tr. 28). Plaintiff testified that he does not have a driver's license and does not drive because of past DUI convictions (Tr. 29). Plaintiff testified that he quit drinking, and that he has been sober for four years (Tr. 29). Plaintiff is still a smoker, and he smokes a third of a pack per day (Tr. 30). Plaintiff says that his leg keeps him from working, but that he cannot afford to go to the doctor or get any medicine (Tr. 30). Plaintiff testified that he does not have health insurance (Tr. 31). Plaintiff testified that his leg was injured in a motorcycle accident, during which his hip was dislocated, and he had to have surgery (Tr. 31).

Plaintiff testified that he was able to lift 30 to 40 pounds on a regular basis; that he could stand between an hour and two hours before he would need to sit down and rest; that he could stand a total of three hours over the course of an eight-hour workday; that he could sit for an hour to an hour and a half before he would need to stand; that he could sit about three or four hours in an eight-hour workday; that his leg goes numb when he walks; that he can walk about one or two blocks; that he is unable to bend over from the waist; that he can kneel with difficulty; that his arms go numb if he holds them up for too long; that he has no problems reaching out straight ahead; that he can manipulate and grip with both his hands; and that he gets out of breath sometimes when he walks (Tr. 31-33). Plaintiff described his pain in his left leg as "[s]ometimes it goes numb and it's the bottom of it [that] feels like pins and stuff sticking in it" (Tr. 33). Plaintiff stated he spends his days reading or watching television (Tr. 33).

At the hearing, Anne Thomas, a vocational expert, testified (Tr. 33-36). Ms. Thomas testified that Plaintiff has worked as a steel worker, which is heavy skilled work (Tr. 34). Ms. Thomas testified that Plaintiff would not be able to return to any of his prior jobs if the ALJ found that Plaintiff was only capable of light work, was limited to standing or walking up to two hours at a time with normal breaks, and was limited to only occasional climbing, stooping, bending from the waist to the floor, and crouching or crawling (Tr. 34). Ms. Thomas testified that a person approaching advanced age, with Plaintiff's prior relevant work experience, with a high school equivalency education, who is capable only of light work and has the same limitations as above, would be able to perform other jobs in the region and the country (Tr. 34-35). Specifically, Ms. Thomas stated that such a person would be able to perform the job of hand packer, for which there are 5,500 jobs in Tennessee and 200,000 jobs in the United States; the job of production machine operator, for which there are 6,000 jobs in Tennessee and 240,000 jobs in the United States; and the job of production inspector, for which there are 3,700 jobs in Tennessee and 140,000 in the United States (Tr. 35). Ms. Thomas testified that this is not an exhaustive list of jobs that such a person would be capable of—these jobs are only representative of the types of jobs that such a person would be capable of performing (Tr. 35). Ms. Thomas testified that if such a person had mild to moderate pain, that would not change the jobs that such a person would be capable of performing, but severe pain would eliminate the possibility of work (Tr. 35). Ms. Thomas testified that if such a person had impairments that prevented the ability to work eight hours per day, five days per week on a regular basis, that person would not be able to work (Tr. 35). When questioned by Plaintiff's attorney, Ms. Thomas testified that if Plaintiff was able to sit and stand in combination for five and a half or six hours, then Plaintiff would not be able to work (Tr. 36).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013 WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B.     The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 1, 2008, the alleged onset date (Tr. 11). At step two, the ALJ found that Plaintiff had the following severe impairments:  mild degenerative joint disease in the left hip and a reported history of surgery for left hip dislocation (Tr. 11-12). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 12). The ALJ considered the listings relative to Plaintiff's impairments, but did not find the presence of any criteria set forth in the listings to warrant a finding that Plaintiff met or equaled any listing (Tr. 12). The ALJ noted that no treating or examining physician suggested the presence of any impairment or combination of impairments of listing severity (Tr. 12). The ALJ determined Plaintiff had the RFC to perform light work, except Plaintiff was precluded from standing or walking more than two hours at a time, and Plaintiff was precluded from more than occasional climbing, stooping, bending from the waist, crouching, or crawling (Tr. 12-14). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Tr. 14). At step five, the ALJ noted that Plaintiff was an individual closely approaching advanced age, had at least a high school education, and was able to communicate in English (Tr. 14). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found the claimant was capable of making a successful adjustment to other work that exists in significant numbers

in the national economy (Tr. 15). This finding led to the ALJ's determination that Plaintiff was not under a disability at any time from the alleged onset date through the date of the ALJ's decision (Tr. 15).

## IV. ANALYSIS

Plaintiff asserts four arguments. First, Plaintiff argues that the ALJ erred by failing to properly consider the opinions of the physicians in the record. Second, Plaintiff argues that the ALJ erred by failing to assign a proper RFC based on the physicians' opinions. Third, Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's credibility. Plaintiff's final argument is that the ALJ erred by failing to include a function-by-function assessment in the RFC determination. Each of these arguments will be addressed below. As Plaintiff and Defendant address Plaintiff's first and second arguments together, the Court will also do so.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not

re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at

odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, No. 12-2405, 2013 WL 5496007, at *3 (6th Cir. Oct. 4, 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

### B.     The ALJ's Consideration and Use of the Physicians' Opinions

Plaintiff argues that the ALJ failed to properly evaluate, consider, and weigh the opinions of Dr. Mullady, Dr. Gregory, and Dr. Gulbenk. Specifically, Plaintiff focuses on what appears to be a typographical error. In the ALJ's decision, the ALJ explained his determination of Plaintiff's RFC by providing a thorough summary of each physician's opinion regarding Plaintiff's limitations (Tr. 14). The ALJ then stated:

> In giving the claimant the benefit of the doubt, lesser weight is given to Dr. Mullady's opinion than to those of Dr. Mullady and Dr. Gulbenk. The opinions of Dr. Mullady and Dr. Gulbenk are given considerable weight, as they are well supported by and consistent with the overall evidence of record, including examination findings and diagnosis.

(Tr. 14).

Plaintiff contends that the ALJ's statements here are "conflicting and unclear," and argues that this error requires remand "for proper clarification of the weight given to Dr.

Mullady's opinion" [Doc. 19-1 at Page ID # 287]. The ALJ's statement regarding the relative weights given to the physicians' opinions clearly contains a mistake. The ALJ could not give lesser weight to Dr. Mullady's opinion than he gave to Dr. Mullady's opinion. As Defendant points out in its memorandum, "even though the decision contains a mistake as written, the correct meaning can be easily ascertained . . . ." [Doc. 21 at Page ID # 303]. As Plaintiff notes,

> There are essentially three medical opinions in the file. That of Dr. Mullady, who opined that the claimant could perform light work but that he was limited to standing/walking with normal breaks for at least two hours in an eight-hour workday. The second opinion was that of state agency medical consultant, Dr. James Gregory, who assigned a medium RFC. The third medical opinion was that of Dr. Celia Gulbenk who assigned a light RFC with occasional postural limitations.

[Doc. 19-1 at Page ID # 287].

The ALJ's statement regarding the relative weights given to the physicians' opinions does contain a mistake, but it is easily understood from context that the ALJ actually meant that he was giving lesser weight to Dr. Gregory's opinion and giving considerable weight to the opinions of Dr. Mullady and Dr. Gulbenk. Dr. Mullady and Dr. Gulbenk both opined that Plaintiff's limitations were more severe than Dr. Gregory's opinion, and thus their opinions were more favorable to Plaintiff, hence the ALJ's statement that he was "giving the claimant the benefit of the doubt" (Tr. 14). The ALJ's statement does contain an obvious error; however, that error does not make the ALJ's decision unclear. From context, the ALJ's relative weight assignments to the physicians' opinions can be clearly understood. Further, as the ALJ gave more weight to the opinions of the physicians that were more favorable to Plaintiff, the Plaintiff's argument here appears to the Court as if Plaintiff is "grasping at straws." I **FIND** that the ALJ's typographical error did not result in an unclear assignment of weight, and therefore I **FIND** that the ALJ properly evaluated, considered, and weighed the physicians' opinions.

14

Plaintiff also argues that the ALJ failed to assign a proper RFC based on the physicians' medical opinions. Specifically, Plaintiff finds fault that the ALJ stated he assigned considerable weight to Dr. Mullady's opinion, but the ALJ's RFC does not mirror the limitations from Dr. Mullady's opinion. Dr. Mullady's opinion was that Plaintiff could "stand and/or walk with normal breaks for at least two hours in an eight-hour workday . . . ." (Tr. 173). The ALJ's RFC determination states that Plaintiff is "precluded from standing or walking more than two hours at a time . . . ." (Tr. 12). Plaintiff argues that the ALJ "committed material error by refusing to assign an RFC which accurately reflects the specific limitations given by Dr. Mullady," and that "[s]ince the ALJ gave 'considerable' weight to this opinion, this specific limitation should have been included in the RFC which the ALJ assigned to the claimant" [Doc. 19-1 at Page ID # 288].

Plaintiff is correct that the ALJ's RFC determination is not identical to Dr. Mullady's opinion of Plaintiff's limitations. However, as Defendant notes, the ALJ's RFC determination is not inconsistent with Dr. Mullady's opinion, and further, the ALJ is not required to adopt any physician's assessment of Plaintiff's RFC. "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(1)). While the opinions of treating physicians are generally given "substantial, if not controlling, deference," *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) (internal citations and quotation marks omitted), Dr. Mullady is not a treating physician. The record in this case does not contain an opinion from any treating physician, as Plaintiff has not provided records of any medical treatment (Tr. 30). Dr. Mullady's opinion does not receive the deference that a treating physician's opinion would, but rather receives the weight that the ALJ accords the opinion.

Here, the ALJ assigned considerable weight to Dr. Mullady's opinion, but the ALJ also assigned considerable weight to Dr. Gulbenk's opinion. Dr. Gulbenk's opinion, which was the most recent opinion and which benefited from the other physicians' opinions as well as the Plaintiff's x-ray results, was that Plaintiff was able to stand and walk for a total of about six hours in an eight-hour workday, with normal breaks (Tr. 191). The ALJ stated that he gave considerable weight to both Dr. Mullady's opinion and Dr. Gulbenk's opinion in determining that Plaintiff "is precluded from standing or walking more than two hours at a time" (Tr. 12, 14). I **FIND** that the ALJ's RFC determination (that Plaintiff can stand or walk no more than two hours at a time) is consistent with the opinions of both Dr. Mullady (that Plaintiff can stand or walk for at least two hours in an eight-hour workday) and Dr. Gulbenk (that Plaintiff can stand or walk for a total of about six hours in an eight-hour workday). Therefore, I **FIND** that the ALJ's RFC determination was properly based upon the physicians' opinions.

### C.      The ALJ's Credibility Determination

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. Specifically, Plaintiff contends that the ALJ did not follow SSR 96-7p, 1996 WL 374186 (July 2, 1996), because the ALJ "plac[ed] excessive emphasis on the fact that the Plaintiff did not seek treatment at an emergency room or health department" [Doc. 19-1 at Page ID # 290]. Plaintiff contends that it was "pure speculation" for the ALJ to state that Plaintiff did not avail himself of charitable or community resources for treatment [*Id.*]. Plaintiff further contends that the ALJ's focus on Plaintiff's lack of emergency room visits was misplaced, because while emergency room treatment is available regardless of ability to pay, "it is common knowledge that unless a person qualifies for indigent care, . . . he or she will in fact accumulate medical bills for such emergency room treatment" [*Id.*]. Defendant contends that the ALJ's credibility determination was proper,

because Plaintiff's file is "devoid of objective medical findings or medical opinion evidence to support Plaintiff's claim of the total inability to work . . . [as] Plaintiff [has] received no medical treatment whatsoever and has taken no medication, not even over-the-counter medication" [Doc. 21 at Page ID # 307].

The ALJ's consideration of Plaintiff's failure to seek treatment in this case was not improper. As noted above, the ALJ is free to rely on his own reasonable assessment of the record over Plaintiff's testimony, which the ALJ may discount after consideration of credibility, motivation, and medical evidence. *See White*, 572 F.3d at 287; *Atterberry*, 871 F.2d at 571. Also as noted above, assessing Plaintiff's credibility is entrusted to the ALJ, not this Court, as the ALJ had the opportunity to observe Plaintiff's demeanor during the hearing. *Rogers*, 486 F.3d at 247; *Jones*, 336 F.3d at 476. Finally, this Court gives substantial deference to the ALJ's credibility assessment, which is "virtually unchallengeable." *Ritchie*, 2013 WL 5496007 at *3 (internal quotation marks and citations omitted). "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (internal citations omitted). "Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff." *Miller v. Astrue*, No. 11-172-GWU, 2011 WL 6749059, at *1 (E.D. Ky. Dec. 22, 2011) (citing *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1082 (6th Cir. 1987).

While Plaintiff quotes a large portion of SSR 96-7p, Plaintiff does not mention the most relevant portion of the ruling, which states:

> In general, a longitudinal medical record demonstrating an
> individual's attempts to seek medical treatment for pain or other

symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).

A claimant's failure to seek treatment may be explained by her lack of financial resources to pay for that treatment. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) ("[T]he severity and disabling nature of a condition must be evaluated without regard to remediability if the claimant has no means to pay for remedial treatment."). Accordingly, SSR 96-7p clarifies an ALJ's duties where a claimant has failed to seek medical treatment, requiring that the ALJ consider any explanations the claimant provides, or other explanations in the case record, before drawing negative inferences from the claimant's failure to seek treatment. Courts, including this

18

Court and other courts in this circuit and district, have considered cases where claimants failed to seek treatment due to an alleged inability to afford treatment, and have found that an ALJ may properly discount a claimant's credibility as to severity of pain where the record does not provide good reasons for the claimant's failure to seek treatment. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("Further, [plaintiff's] use of only mild medications (aspirin) undercuts complaints of disabling pain, as does his failure to seek treatment . . . ."); *Ring v. Comm'r of Soc. Sec.*, No. 1:12-cv-197 (E.D. Tenn. Aug. 21, 2013) ("a claimant's failure to seek treatment undercuts claim of severe symptoms"); *Hashemi v. Comm'r of Soc. Sec.*, No. 11-13629, 2012 WL 3759033, at *13-14 (E.D. Mich., Aug. 6, 2012) ("[I]f Plaintiff were in as much pain as he claimed, he would have sought out intermittent or emergency treatment . . . there was no evidence that Plaintiff ever sought out low-cost or free care.").

Here, the ALJ made specific findings regarding Plaintiff's credibility. The ALJ found that Plaintiff's alleged limitations were "far less than fully credible" because "[t]he examination findings and objective diagnostic testing results simply do not support the degree of limitation the claimant alleges" (Tr. 13). The ALJ Specifically found that the "objective findings by the consultative examining physician and results of left hip x-rays have not shown the type of abnormalities one would expect to see, given the degree of limitation alleged by the claimant" (Tr. 13). The ALJ also discounted Plaintiff's credibility for his failure to seek treatment, stating

> The severity of the claimant's pain is not found to be credible to the extent alleged by the claimant, as he has apparently not sought treatment for his pain at the health department or emergency room, which is available regardless of the ability to pay. He has not even reported taking over-the-counter medication for his pain . . . . While the claimant alleged that he had not been able to obtain treatment or prescribed medications because he could not afford to do so, there is no indication that he has attempted to avail himself of any resources which may be available through charitable or community organizations for those who are indigent or persons

> with low-income. In addition, the record indicates that the claimant has not sought emergency room treatment for his ailments, which is available regardless of the ability to pay. The claimant did not report taking even over-the-counter medications for his pain, or doing anything to relieve the pain, which is inconsistent with a disabling level of pain.

(Tr. 13-14). The ALJ specifically addressed Plaintiff's claim that he was unable to afford any treatment or any medication, and found that Plaintiff's claims of severe and disabling pain were inconsistent with his failure to seek any relief for his pain, as Plaintiff did not seek any low-cost or free care options and did not even take over-the-counter pain medication. Plaintiff argues that the ALJ "did not identify any concrete evidence that the claimant would be able to receive [free or low-cost] treatment," but that is not the standard. The ALJ is only required to first consider any explanations for the failure to seek treatment, which are in the record or provided by Plaintiff, before discounting the credibility of Plaintiff's complaints. After considering any explanations in the record or provided by Plaintiff, the ALJ may discount Plaintiff's credibility if the explanations do not sufficiently explain the failure to seek treatment.

Here, Plaintiff's complete failure to seek any treatment or even over-the-counter pain medication seriously undercuts the credibility of his allegations. I **FIND** that the ALJ's discounting of Plaintiff's credibility for his failure to seek treatment of any kind was proper and consistent with the holdings of courts in this circuit and district. I also **FIND** that the ALJ's discounting of Plaintiff's credibility for his failure to seek treatment was consistent with the requirements of SSR 96-7p, as the ALJ did properly first consider the Plaintiff's explanation for his failure to seek any treatment. Plaintiff's claimed inability to pay did not explain why he failed to seek free or low-cost treatment options, or even take over-the-counter pain medication, and thus the ALJ properly discounted Plaintiff's claims of severe pain for inconsistency with Plaintiff's actions and with the objective medical findings in the record. Further, I **FIND** that the

ALJ properly based his assessment of Plaintiff's credibility on several factors, not just his lack of treatment; even if the ALJ's consideration of Plaintiff's lack of treatment was found to be improper, I would still find that the ALJ's overall credibility assessment was proper and supported by substantial evidence, given that Plaintiff's complaints were inconsistent with the medical findings and that none of the physicians opined that Plaintiff was unable to work.

### D. The ALJ's RFC Determination

Plaintiff's final argument is that the ALJ's RFC determination is improper because the ALJ failed to include a function-by-function assessment as required by SSR 96-8p, 1996 WL 374184 (July 2, 1996). Plaintiff quotes from SSR 96-8p, stating that the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." SSR 96-8p, 1996 WL 374184 at *7. Plaintiff also quotes from SSR 96-8p regarding the ALJ's consideration of Plaintiff's exertional capacity, that "[e]ach function must be considered separately . . . ." *Id.* at *5. While Plaintiff quotes SSR 96-8p, Plaintiff does not support his arguments with any citation to case law or other regulatory authority.

"While SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations and quotation marks omitted). Further, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted). SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision. Here, the ALJ specifically

discussed, with detail, Plaintiff's complaints regarding his limitations (Tr. 13) as well as each of the consultative physicians' opinions regarding Plaintiff's limitations (Tr. 14). The ALJ also stated that he had considered the entire record carefully (Tr. 12) before determining Plaintiff's RFC. The ALJ's actual RFC finding states:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is precluded from standing or walking more than two hours at a time; and he is precluded from more than occasional climbing, stooping, bending from the waist to the floor, crouching or crawling.

(Tr. 12). I therefore **FIND** that the ALJ properly considered each function separately as required by SSR 96-8p. I also **FIND** that the ALJ's narrative discussion sufficiently explained Plaintiff's ability to perform work activities and his limitations in performing work activities. As the ALJ properly considered Plaintiff's impairments and, contrary to his arguments, considered all of them, whether severe or not, in combination with one another, I **FIND** the ALJ's RFC determination to be proper and supported by substantial evidence. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

## V.     CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[1] that:

---

[1] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition of the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

1) Plaintiff's motion for judgment on the pleadings [Doc. 19] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE